IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN J. GUZMAN-MARTE | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-CV-0628 |
| | : | |
| UNITED STATES OF AMERICA | : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 01-CR-0365 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN J. GUZMAN-MARTE | : | |

**SURRICK, J.**                                                                 **AUGUST 24, 2005**

## MEMORANDUM & ORDER

Presently before the Court are Juan J. Guzman-Marte's pro se Motion Under 28 U.S.C. § 2255/Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. Nos. 25, 27), the Government's Response thereto (Doc. No. 31), and Petitioner's Reply to the Government's response (Doc. No. 32). For the following reasons, Petitioner's Motion will be denied.

**I.    BACKGROUND**

Juan J. Guzman-Marte ("Guzman") was indicted on June 27, 2001, on charges of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1);

1

distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (Count 2); possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count 3); and attempt to possess 500 grams or more of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(b)(1)(B), 846 (Count 4).  (Doc. No. 16.)  On August 16, 2001, Petitioner entered a plea of guilty to all Counts in the Indictment.  (Doc. No. 19.)  On November 20, 2001, Petitioner was sentenced to a total period of incarceration of 78 months, to be followed by a period of supervised release of 5 years.[1]  Petitioner did not appeal his sentence.

Guzman filed the instant Motion alleging that counsel was ineffective because he:  (1) stipulated in the plea agreement to an amount of cocaine that was not accurate; (2) allowed Petitioner to plead guilty to conspiracy, even though Petitioner could not conspire with a government agent or informant; and (3) failed to argue at sentencing that the Government engaged in "sentencing manipulation" by inducing him to agree to buy 5 kilograms of cocaine. (Doc. No. 25.)

II.    **LEGAL ANALYSIS**

   A.    **Statute of Limitations**

Section 2255 permits a prisoner in federal custody to challenge the validity of his sentence.  28 U.S.C. § 2255 (2000); *see also United States v. Eakman*, 378 F.3d 294, 297 (3d Cir. 2004).  The prisoner has one year from the latest of the following acts to file a petition under § 2255:

   (1) the date on which the conviction became final; (2) the date on which the

---

[1]Guzman had an Offense Level of 27 after receiving a safety-valve reduction of two levels and a three-point reduction for acceptance of responsibility.  He was a Criminal History Category I.  The Guideline range was 70-87 months.

2

> impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. "If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

Here, Petitioner did not file a direct appeal to the Third Circuit. Thus, his conviction and sentence became final when the time for filing an appeal expired on December 18, 2001.[2] Petitioner was required to file his § 2255 Petition within one year of that date. He did not file this Petition until 2004. Therefore, his Petition is barred by the statute of limitations.

**B.     Ineffective Assistance of Counsel Claims**

Even if we were to consider the merits of Petitioner's § 2255 Petition, however, we would deny habeas relief. Guzman asserts ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for evaluating a Sixth Amendment claim of ineffective assistance of counsel:

---

[2]Under Federal Rule of Appellate Procedure 4(b), which governs the time for filing a notice of appeal in a criminal case, "a defendant's notice of appeal must be filed in the district court within 10 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal." Fed. R. App. P. 4(b). Judgment was entered on December 4, 2001. (Doc. No. 23.) Applying Rule 4(b) and Federal Rule of Appellate Procedure 26(a), which governs the computation of time, Petitioner was required to file an appeal on or before December 18, 2001.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  Both the "performance" and "prejudice" prongs of the *Strickland* test must be satisfied to establish a Sixth Amendment violation.  *Id.*

To demonstrate that counsel's performance was deficient, a petitioner must show that counsel's representation fell below an "objective standard of reasonableness" based on the facts of the case, viewed at the time of counsel's conduct.  *Id.* at 688, 690.  A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689; *see also id.* ("Judicial scrutiny of counsel's performance must be highly deferential."); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) ("*Strickland*'s standard, although by no means insurmountable, is highly demanding. . . .  Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ . . . .").

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.  Courts define "reasonable probability" as "one which is sufficient to undermine the confidence in the outcome."  *United States v. Bautista*, Cr. No. 01-323-06, 2005 U.S. Dist. LEXIS 16770, at *4 (E.D. Pa. Aug. 15, 2005) (quoting *Strickland*, 466 U.S. at 694). The effectiveness evaluation must be made in light of "the totality of the evidence before the judge or jury" in the case.  *Strickland*, 466 U.S. at 695.

Guzman has failed to demonstrate that counsel's performance was deficient in any respect. Petitioner asserts that counsel was ineffective because counsel stipulated in the Guilty Plea Agreement ("Agreement") to an amount of cocaine that was not accurate. When effectiveness of counsel is at issue during the plea process, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Guzman contends that he only intended to distribute 3.25 kilograms of cocaine, and not the 5 kilograms of cocaine specified in the Agreement. However, his assertion is flatly contradicted by the record. Under the terms of the Agreement, Petitioner agreed to plead guilty to each of the four counts against him "arising from [his] distribution of 1.25 kilograms of cocaine, possession of heroin with intent to distribute, and attempt to possess with intent to distribute five kilograms of cocaine between mid-May 2001 and June 6, 2001." (Agreement ¶ 1.) At the guilty plea hearing, Guzman told the Court while under oath that he voluntarily signed the Agreement after his attorney read it to him, that he understood the Agreement, and that he had no questions with regard to it. (Tr. 8/16/01 at 28.) In addition, Petitioner admitted during the plea colloquy that the amount of cocaine that he conspired with others to distribute was in excess of five kilograms. He further acknowledged that "the cooperating witness told [him] that the cooperating witness had kilograms of cocaine that the witness wanted to sell. [Guzman] agreed to buy five of them." (*Id.* at 22, 26.) Since Petitioner voluntarily admitted while under oath to conspiring to distribute and attempting to possess with intent to distribute five kilograms of cocaine, his counsel's performance was not deficient when counsel permitted such information to be included in the Plea Agreement.

Petitioner also argues that his counsel was ineffective because counsel allowed him to plead guilty to conspiracy, even though Petitioner could not conspire with a government agent or informant. However, Guzman admitted during his plea colloquy that he conspired to distribute cocaine with individuals who were not government agents or informants. Specifically, Guzman admitted that "[h]e told the cooperating witness that another person had the cocaine but that he could get it quickly because that person was in the area and could give it to the cooperating witness that day." (Tr. 8/16/01 at 21, 26.) After Guzman met with the cooperating witness, he "went to his house . . . where he met with two Hispanic males. One of the two Hispanic males took a bag from the car that he arrived in and went into the defendant's residence. And this bag contains part of the cocaine." (*Id.*) After Guzman agreed to meet the cooperating witness at a gas station, "[t]he defendant arrived at the gas station with one of the two Hispanic males." (*Id.*) After the Government recited these facts, Petitioner admitted that the facts were true and acknowledged that he understood that by admitting these facts he was admitting that he was guilty of conspiracy as well as the other offenses. (*Id.* at 26.) Since Petitioner voluntarily admitted to conspiring with persons who were not government agents or informants, it was objectively reasonable for his counsel to advise him to plead guilty to conspiracy.

Finally, Petitioner alleges that counsel failed to argue at sentencing that the Government engaged in "sentencing manipulation" by inducing him to agree to buy 5 kilograms of cocaine. Sentencing manipulation "occurs 'when the government engages in improper conduct that has the effect of increasing the defendant's sentence.'" *United States v. Padilla*, Civ. A. No. 03-CV-85, 2003 U.S. Dist. LEXIS 12195, at *14 (E.D. Pa. June 20, 2003) (quoting *United States v. Okey*, 47 F.3d 238, 240 (7th Cir. 1995)); *see also United States v. Scavetti*, Cr. No. 97-279-02,

6

1999 U.S. Dist. LEXIS 1315, at *5 (E.D. Pa. Feb. 9, 1999).  Sentencing manipulation "has no bearing on the defendant's guilt or innocence" and "is only applicable to the sentencing phase of the defendant's case."  *Padilla*, 2003 U.S. Dist. LEXIS 12195, at *14.  To obtain a sentence reduction under a sentencing manipulation theory, a defendant must show:  (1) that the Government engaged in extraordinary misconduct; and (2) that he had no predisposition to commit the crime at issue.  *Id.* at *26-28 (citing *United States v. Egemonye*, 62 F.3d 425, 427 (1st Cir. 1995); *United States v. Montoya*, 62 F.3d 1, 4 (1st Cir. 1995)).  Guzman provides no evidence of extraordinary misconduct on the part of the Government.  Further, as discussed above, there is more than enough evidence in the record to demonstrate that Guzman had the predisposition to commit the crime of attempting to possess 500 grams or more of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(b)(1)(B), 846, and not a lesser offense.  There is no evidence that he was manipulated into committing the more serious crime.  Guzman's contention that his attorney was ineffective for failing to argue that the Government engaged in sentencing manipulation is without merit.

     An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN J. GUZMAN-MARTE | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-CV-0628 |
| | : | |
| UNITED STATES OF AMERICA | : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 01-CR-0365 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN J. GUZMAN-MARTE | : | |

**ORDER**

AND NOW, this 24th day of August, 2005, upon consideration of Juan J. Guzman-Marte's Habeas Corpus Motion Under 28 U.S.C. § 2255/Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. Nos. 25, 27, Cr. No. 01-CR-0365) and the Government's Response thereto, it is ORDERED that the Motion is DENIED. A Certificate of Appealability is also DENIED.

IT IS SO ORDERED.

BY THE COURT:

S:/R. Barclay Surrick, Judge